with the Court's permission, I'd like to reserve two minutes of my time for rebuttal. Reasonable suspicion requires a particularized and objective basis to suspect the particular person stopped of criminal activity. According to the government and the District Court, there was reasonable suspicion to believe that Mr. Hernandez was somehow connected to the criminal activity reported by the District Court. anonymous tipster, namely that somebody inside room 443 of Olympic Hotel was threatening somebody with a gun. Now, Mr. Officer Montero, who, I'm sorry, Mendoza, who actually sees him, never made that claim. This is something that the government's claimed. And there's good reason Montero himself never made that claim. It's because there's just no good basis for it. First of all, the uncorroborated tip, which had very little, almost no detail, wasn't even sufficient to provide reasonable suspicion there was actually criminal activity in room 443. But even if we assume that's true... Why wouldn't, you say it wasn't enough to provide reasonable suspicion? Why not? Well, I think it's because there was no, there's no verifiable details that the officers could or did check once they got there. And so I think that, for example, if the officers had chosen to bust through the door on the grounds of this gives us reasonable suspicion for an exigent circumstances search, I think that that would be a very questionable case. But the court doesn't have to spend a lot of time on that. Because the separate question is whether there was any particular suspects that could be identified under the reasonable caller is that person did not describe the suspect at all, not by race, not by gender, not by clothing, nothing. So even if there's reason to believe that somebody was inside room 443 with a gun, there's no basis to suspect anybody in particular who's not in that room. I thought, maybe I'm misremembering, but I thought they'd actually checked and didn't see anybody in room 443. They knocked on the door and nobody answered. Okay, that's right. And so, so wouldn't they then be able to at least make an assumption that if somebody called in and said there was somebody with a gun there, they might still be in the local vicinity? No, I think that would be more of a hunch. And let me just explain a little bit more about the fact. So the, the way it looks like it happened, they seized the three initial men before they knock on room 443. They knock on room 443. Well, you're not representing them, but would you say that they, that that was also a violation of their Fourth Amendment rights? Yes, definitely. Because again, there's no reason to believe that they are the suspect because we don't know anything about the suspect. We don't know what their age is, their race is, their gender. So there's no reason to show up on the Fourth Floor. And keep in mind too, something that the government ignores, they said they were found around room 443. Hopefully by now the court has had time to look at those videos and you'll see it's actually quite a big hotel. The floor is very, has myriad hallways going in different directions. And the three suspects were found near room 404, 420, and 421. Not even near 443. Do we know whether there were any guns found on them? No, no guns were found on them. All of them were released except for one who was cited for having an open beer container. Were they, were they also frisked then? Oh yes, they were frisked and handcuffed. Yeah, I know, yeah, okay. And, but in this case, Hernandez was, as I understand it, walking up the stairs, looked at the officer, the officer saw him kind of notice him and then kind of turned back and go back downstairs. Why, why in this circumstance where they're looking for at least a tip that there was a, someone with a gun in that, that vicinity, why wouldn't that be enough to raise suspicion about Hernandez's action? With regard to the specific suspicion about him being involved in room 443, there is nothing about those circumstances that could possibly connect them to this. Well, except that he was on the floor where room 443 was. Well, your honor, let's, let's, let's be specific about that. He was in a stairwell and as we pointed out in the briefs, not the stairwell, there's multiple stairwells, one of them is very close to room 443. He's not in that one. He's around a corner down a long distance. He's walking up the stairwell, sees the officers, decides to turn around. We don't know whether he intended to stop on the fourth floor. If he did, which of the many, many rooms he was planning to go to, whether he was intending to go to one of the higher floors and one of the many, many rooms up there. So to say that just seeing him there in that moment provides reasonable suspicion. Well, I don't think that the position is just seeing them there in the moment, but that wherever he was intending to go, he got up there, saw the officers, realized something was going on, did not want to be there, and, you know, walked back down. I just wonder, I mean, you're putting a lot of weight on what the officers should be able to internalize in a, in a split moment when, you know, they're, they're responding to a tip that there's a, there's a gun. I mean, that, that seems like a reasonable response. The police need to maintain their safety and the question is whether that was enough reasonable suspicion to detain him when he... He did. And, and again, there's a whole set of circumstances and, and this is what I want to emphasize with, with your, your Honor's point. As we talk about the connection to Room 443, you'll see a lot of that in the government's briefs and even in the district court's order. Look very closely at Officer Mendoza's declaration. He doesn't make that connection. If you read his declaration, it's, we were responding to this call, we're there, I see him do this thing in the hallway, I immediately become suspicious. And his theory is, because based on my prior practice, these gang members will always just come up to us and chit-chat unless they have something to hide. So since he turned around, I assumed he had a gunner or drugs. He never says, and I thought he was, might be the guy who was had a room in Room 443. Well, but everything you just said does seem to support reasonable suspicion that there was something odd going on and you had a circumstance where you had to maintain, you know, security. Well, not under this court's case law, because if we look at what he actually said, we have first, he says, the decision to turn around. And even in the case of Brown, which we discussed in our Rule 28J letters, the court very recently said, even somebody who runs away isn't, it doesn't make so-called flight a relatively strong reasonable suspicion factor. Here we have somebody walking away, going about his business, as the Supreme Court and this court tells us people are allowed to do rather than voluntarily enact with the police. And moreover, as Brown recognized, you can't ignore the effect of race in this situation. Here's a young Latino man walking up the stairs, seeing a bunch of officers handcuffing and frisking a bunch of other Latino men, and wisely said, you know what, I'll go another way. And that doesn't provide reasonable suspicion, because if it does, then what you're basically saying is, in all these communities, that people have the choice of either voluntarily enacting with the officers, or they get frisked, because it's suspicious. Let me ask you, say we were to find that it was a reasonable stop, reasonable to detain him, is there a separate analysis we need to do about the reasonableness of whether he should have, whether the officer should have frisked him to find out whether he had a weapon? Yes, yes. There has to be a question whether he's presently armed and dangerous. And so that goes back to, kind of, you have to look at what is the theory you're finding reasonable suspicion on. Officer Mendoza, again, he wasn't connecting him to room 443, he was saying, he might have guns, he might have drugs. So, well, let's say he might have drugs. If he has drugs, that's not reasonable, it's not reasonable to believe that he's armed or dangerous. I see if you want to reserve your time. May it please the Court, Brittany Harris for the United States. This Court should affirm the District Court's decision denying defendant's motion to suppress because Officer Mendoza had ample reasonable suspicion to briefly stop and detain defendant that night. After receiving a 911 call that someone was threatening people with a, quote, fat handgun in room 443 of the Olympic Hotel, the officers arrived on scene and they detained three individuals who were immediately around room 443. I want to stop and talk about the location of room 443 in relation to where these three men. As defense argues, defense contends that room 443 is nowhere near the location of where these three men were detained. It is undisputed that two of these men were detained right near room 421. One near the door frame of room 420. The record shows that room 421 is directly across the narrow hallway and the entryway of room 443. And I want to point your honors to ER 94 at 05 colon 08 colon 55. In that frame, your honors, you'll see that room 421 is on the left side of the frame and room 443, the entryway to room 443 is on the right side of that frame. It's a very narrow hallway. You'll see an officer who's back is to room 421 and he's pointing his firearm to room 443 where they're trying to make the knock and and request for the occupants to come out. This is all as to those three that were initially detained. Is that right? That is correct. Tell us about Hernandez. How close was Hernandez to this? Yes. Your honor, the third individual who was detained near room 417, the record actually shows that he likely was also near room 421 and that is at, excuse me, that is at ER 92 at five colon seven colon 25. The officers who are right around room 421 report that they were able to detain two of them, but that the third one fled near the other officers. And he fled near room 417, which is the room right in front of the open stairwell where defendant was coming up from. That individual and the officers refer to him as by his gang moniker, baby G. That's the individual that officer Mendoza sees being detained right when he comes up the fourth floor stairwell. That's the individual that officer Mendoza recognized to be a crazy writer gang member. And so when officer Mendoza sees defendant about 30 seconds after the officers had knocked at room 443 and no one answered, he sees defendant coming right up that same stairwell right in front of room 417. He makes eye contact with defendant. Defendant gives the surprised look. And at that point, officer Mendoza recognized him. He knew that that was someone that he encountered just a few months prior. He knew that he was on probation, that he had search conditions, that he was a member of the same gang as the officer on the fourth floor. He knew that he had been with that gang since he was eight years old. He knew that his moniker was youngster. And when they made eye contact with one another and after defendant gave his surprised look, he immediately U-turned and went back down the stairwell. All of that combined gives rise to reasonable suspicion that defendant could have been this potential shooter as identified in the 911 call. Let's assume that he did not act as he did, that he's encounter. He comes up, he sees there are police on the floor and he walks toward them. Can you say with a straight face that they wouldn't have done to him exactly what they did to the other three? That the officers would not have detained him. That they would have frisked him. I mean, you're saying, oh, because he had this conduct that that made him subject to suspicion. But what do you think he might have done that would have allayed that suspicion in the eyes of the officers? Your Honor, I think that there is reasonable suspicion even if defendant didn't make the U-turn and evasive move and attempt to flee the situation. I think that only adds to the possibility that he was found in the stairwell very close to room 443, that he was connected to the three individuals who were right outside of room 443, which is the location that the caller reported. Does the record tell us that he was connected other than that they were gang people? They were members of the same gang, Your Honor. But that doesn't mean they necessarily were in cahoots that evening. That's correct, Your Honor. And I think also it's important for this Court to keep in mind the nature of this 911 call. This is an emergency situation. This is someone calling, reporting violence in a public hotel. And that, by its very nature, takes this case out of some cases that defense cited, like J.L., like Brown, and like Jones. The officers are obliged to fully investigate a 911 call of this nature, especially in today's age with mass shootings in public places. The officers had to. I think the law is... It doesn't mean that the officers couldn't have investigated or continued to investigate. They, in fact, found out that the three men that they stopped were not armed and dangerous. They find this man, Hernandez. They can approach him. They can talk to him. But it seems to me that under the law, they don't... Unless they have some reason that we can articulate that he's armed and dangerous, they had no right to frisk him, at least. I have two responses to that, Your Honor. Number one, the officers who were detaining the three individuals hadn't yet finished their investigation. I don't know that they had yet determined that those three individuals did not have firearms on them. So their reasonable suspicion had not been allied at that point. And second, Your Honor, the nature of this call regarding threatening violence at a hotel in a high crime area, a gang stronghold hotel, and defendant U-turning after seeing Officer Mendoza, I think the totality of those circumstances give reasonable suspicion for Officer Mendoza to briefly stop, detain, and frisk defendant. And why... Counsel, let me ask you this. As I understand this record, this issue was actually presented to the district court in a way because I thought that one of the arguments in the district court was that they were just grabbing people. And that the district court had made findings that this particular stop was because of what the officer knew and understood from his... Was grabbing people without any reason to suspect them. That is absolutely correct, Your Honor. And the district court also credited Officer Mendoza's testimony. He found him credible. He found his observations to be reasonable. So it wasn't just the emergency nature of the 911 call. It was also coupled with Officer Mendoza's observations of defendant. And then the district court went through the reasons that he had for stopping, doing a Terry stop for this person. But I guess where I am asking is, then the district court said once he stopped him, he had the authority to pat him down for weapons. Why is that so? Your Honor, a few things. Number one, the nature of the 911 call reported that someone was threatening with a gun. So I think that that is a very large part in giving reasonable suspicion that defendant might be armed and dangerous. But is it then your position that anyone that they stopped and detained, they inherently had a right or a reasonable suspicion to frisk them as well? Is there any difference? If they had reasonable suspicion to think that person was connected to the contents of the 911 call, it might have been a different situation had they stopped and frisked someone on the second floor in the lobby of the hotel. But that's not... Your Honor doesn't have to go that far here. Reasonableness doesn't turn on the availability of other intrusive investigatory techniques. The officers... This was a very dangerous situation for them. Didn't they have to have reasonable suspicion that he was armed? That is correct, Your Honor. And what was that based on? That's what we're concerned about. That was based on the contents of the call and also on defendant's actions that night. Upon seeing Officer Mendoza, defendant made an immediate U-turn and abandoned his destination and fled back down the open stairwell. And Officer Mendoza knew this person. He knew that he was on probation with search conditions. And so that is what heightened Officer Mendoza's reasonable suspicion that he was armed and dangerous. He didn't have any record of having used firearms, so it was a vandalism, fairly minor crime, I assume, in his background. That is correct. It was a prior conviction for vandalism, but he was on formal probation for that. Okay. Okay. Without any further questions, we understand your argument. Thank you. Thank you. Thank you. Unless the Court has any particular questions it wants me to address, I'd like to make two points. One is co-counsel's concession that, well, even if you put what happened in the stairwell aside, if he had just walked up and approached the officers, the same thing would have happened to him as to anybody else. I think that kind of makes our case for us because we go back again to the definition of reasonable suspicion, an objective and particularized basis to believe the particular person's stop is guilty of something. So what she's saying is okay, is that we have an allegation that someplace over here in room 443 something bad went on and we're just going to round up the usual suspects and hope that one of them is it. No, but that is exactly what the district court considered and said that is not why this person was stopped. You see, that's where I'm having problems with your argument. Well, but I mean, although I will say in a footnote he said what happened to those other three men was perfectly fine. But you're right, there was additional facts, but those additional facts were the so-called headlong flight, which after Brown, I think, is completely eliminated as a valid reasonable suspicion factor. And then other things as you're It's not sufficient, but it's a factor. Oh yeah, a lot of innocent things are a factor. It's all balanced, but it doesn't mean much. In fact, in Brown, the man actually ran away, didn't just casually walk away. And I think that that factor is so important because, again, if even that constitutes something suspicious, what does a young man have to do in that situation to not engage with the police and not be then found to be reasonably suspected of something? Unless there are quite any further questions? Thank you. Thank you. The case is submitted.
judges: Schroeder, Lefkow, Nelson